RECK ET AL., APPELLANTS, *v.* DALEY, APPELLEE.

308

(No. 836—Decided January 14, 1943.)

*Mr. C. W. Elliott* and *Mr. Elliott Levey,* for appellants.

*Mr. Fred Schatzmann* and *Mr. Brandon R. Millikin,* for appellee.

MATTHEWS, P. J.   This is an action for specific performance of a contract to convey a leasehold estate in certain real estate located in the city of Middletown, Butler county, Ohio. It was heard *de novo* in this court.

In the petition it is alleged that one Lacock, on May 20, 1940, entered into a written agreement with the defendant acting through her duly authorized agent, Bachelor, to lease to Lacock as an incorporator of and agent for Bob White Miami Valley Frosted Foods, Inc., then in process of incorporation, the northeast room in a specifically described and located building, for a monthly rental of $45 payable in advance pending the incorporation, and upon the incorporation to execute and deliver a lease of the premises to the corporation for a period of two years with privilege of renewal for five years at a monthly rental of $45 per month, and that thereafter the agreement was ex-

panded to include an additional room and the monthly rental raised to $50.

It is also alleged that the corporation entered into possession and continued in possession until January 3, 1941, when a receiver was appointed by the Common Pleas Court of Butler county, with authority to take possession of its assets; that the receiver took possession; and that thereafter on January 10, 1941, acting under the order of and in accordance with the authority of the court, the receiver sold and conveyed all the assets of the corporation, including this contract for a lease, to Ensley R. Reck, one of the plaintiffs, and that Reck subsequently formed a partnership with one Crauder, the co-plaintiff, under the name of Bob White Miami Valley Frosted Foods, Inc., and the partnership entered into possession of the premises and has ever since occupied them.

It is then alleged that the plaintiffs assumed all obligations of Lacock and the corporation under the contract, "and the defendant by her said agent recognized plaintiffs as the successors and assignees of said Lacock and said corporation in that respect"; that on the defendant's demand they paid the rent that the corporation owed at the time and have ever since continued to occupy the premises and pay the rent therefor to the defendant as it accrued, "and the defendant is estopped to deny that plaintiffs have succeeded to all the rights of said Lacock and said corporation and said receivers in and to said premises and to deny that plaintiffs are entitled to a lease pursuant to the terms of said agreement."

The petition concludes with an allegation of performance of all conditions precedent, a refusal by defendant to perform and a prayer for specific performance and all proper relief.

The defendant, by answer, admitted that one Bach-

elor entered into the contract with Lacock, that a receiver had been appointed for the corporation and denied all other allegations.

At the threshold we are confronted with a question of pleading. At the close of the evidence in the Common Pleas Court the plaintiffs asked leave to file an amended and supplemental petition. This was denied. At the opening of the trial in this court, that request was renewed. The supplemental fact alleged is that the plaintiffs have continued to pay and the defendant has continued to accept the rent during the pendency of this action. Otherwise, the allegations of the proffered pleading follow the allegations of the original petition except that the dealings between the plaintiff Reck and the defendant's agent just before and after the receiver's sale were couched in the language of agreement instead of that of estoppel, so that the result would be that the plaintiff would plead an original agreement between the plaintiff Reck and defendant, at that time identical in terms with that of May 20, 1940. The nature and extent of the obligation of the defendant is not changed by the tendered pleading. Nor are the allegations of fact characterized as a contract in the amended petition substantially different from the facts upon which an estoppel was asserted in the original petition. The only change is that the plaintiffs abandoned their claim that the receiver had assigned the contract to them and relied exclusively on their dealings with the defendant's agent.

It is claimed that this is the substituting of a new cause of action and is, therefore, not permissible.

The legal consequences of an actual contract and an estoppel to deny the existence of such a contract are identical. And the same circumstances may conclusively prove the existence of an actual contract and, of course, also constitute an estoppel to deny the exis-

tence of the contract. That, we think, is the situation shown by these pleadings.

In 19 American Jurisprudence, 800, Section 148, it is said:

"A person may be estopped, however, from questioning the existence or effect of a contract, the existence of which he has asserted to the other party to his own benefit or the injury of the other. If a party appears to be acting under a contract and leads the other party to believe that he is doing so, he may be estopped from subsequently denying it. Likewise, if a stranger to a contract conducts himself in such manner as to lead a party to the contract to believe that he has made the contract his own, and his acts are explicable only upon that theory, he will not be permitted afterwards to repudiate its obligations. One who leads another to act upon a supposed contract and to incur expenses or otherwise change his position by reason thereof is estopped to refuse compliance with his own obligations thereunder upon a pretext of some defect in a matter of form. Parties to a transaction conceded to be fair and supposed to be lawful, on the faith of which many other transactions have been entered into, are estopped from questioning its validity and repudiating the transaction to the injury of others."

While we are of the opinion that the averments of the petition are broad enough to permit proof of the facts alleged in the amended and supplemental petition, we have concluded that the latter more clearly sets forth the facts according to their legal effect and, therefore, grant the plaintiffs' motion for leave to file.

At the trial in this court we reserved ruling upon the motion for leave to file. The trial then proceeded and the parties introduced a transcript of the evidence that had been introduced in the Common Pleas Court. No other evidence was offered. The defendant's an-

swer to the original petition may be considered an answer to the amended and supplemental petition, or if desired, leave is granted to plead to the amended and supplemental petition.

The terms of the contract between Lacock and the defendant which the plaintiffs allege they and the defendant agreed should be the terms of their contract, are as follows:

"Agreement

"Between Frank T. Bachelor, acting as agent for Myrtle I. Daley, and W. A. Lacock, representing The Bob White Miami Valley Frosted Foods, Inc., a proposed pending incorporation. It is hereby agreed that Frank T. Bachelor rents to W. A. Lacock the northeast room formerly used as a market house at the cor. of 2nd. ave. and Park st. in the city of Middletown, O. A monthly rental of $45 forty-five dollars payable in advance pending and completion of incorporation of Bob White Miami Valley Frosted Foods, Inc.

"It is further agreed that Frank T. Bachelor agrees to execute and deliver a lease to said Inc. for a term of two years with privilege of renewal for five years at a monthly rental of $45. It is further agreed that said W. A. Lacock and the proposed Inc. make all necessary repairs and improvements at their own expense and only after having received permission from said Frank T. Bachelor or owner of property, and that said W. A. Lacock and incorporation will receive and deliver to Frank T. Bachelor a signed release for labor or material furnished on property fully releasing said owner from any and all claims against property for material, labor or any other debts contracted by them on property.

"Signed Frank T. Bachelor
"W. A. Lacock

"Nell Bachelor
"Dated May 20, 1940
"Rent Paid to June 20/40"

In argument and by brief the defendant urges several grounds for a denial of relief. It is urged that there was no evidence that the receiver had sold or assigned the contract of May 20, 1940, to either of the plaintiffs—and that is true. The evidence shows that this contract was not mentioned in any way in the receivership proceedings. The plaintiff Reck purchased all the assets mentioned in the inventory and was placed in possession of those assets and these premises with the acquiescence and consent of the receiver, but nothing was said in the order of the court on the subject of the contract for a lease. As an actual fact, however, the plaintiffs succeeded the receiver in the possession of these premises and the evidence shows conclusively that they were recognized in that relation personally by the defendant by acceptance of rent and expressly by Bachelor, her agent who, so far as he had the power, substituted them for the original lessee. Whether these acts and these assumptions are considered as raising an estoppel to deny an assignment of the contract or as circumstantial evidence of a new contract containing the same terms, the same change takes place in the jural relation of the parties. The defendant is bound, and to the same extent, in either event.

All this was done with the knowledge and acquiescence of the officers of the corporation, but whether it is likewise estopped could not and need not be determined in order to decide the issues between the parties to this action.

Defendant's counsel insist that Bachelor was not authorized to enter into this contract. It is true that he had no written authority, but there is no requirement of law that the authority of an agent to enter into a contract to convey an interest in real estate should be evidenced by a writing signed by his principal. 1 Ohio Jurisprudence, 667, Section 30.

The question in this case is whether there is sufficient evidence that Bachelor had actual authority to enter into this contract—and it is not material how that actual authority was conferred. Of course, the agent can not by any extra-judicial admission, representation or declaration create an authority. Before what he says can bind his principal, his authority to speak for his principal must be established. *Bradford Belting Co.* v. *Gibson,* 68 Ohio St., 442, 67 N. E., 888. But that rule has nothing to do with the competency of the agent as a witness in a case in which his authority is drawn in question. As a witness he does not assume to act or speak as the agent of the principal. Like all witnesses, he testifies not in a representative capacity, but under the solemnity of an oath binding his personal conscience.

In 1 Ohio Jurisprudence, 638, Section 13, it is said: "But if the fact of agency rests on parol, it may be established on trial by testimony of the agent himself. In an action between the parties affected by his acts, the agent may be called upon to prove his agency, or to prove the fact that he acted without authority."

In 2 American Jurisprudence, 352, Section 445, we read:

"It is well established that the admissions, statements, and declarations of an agent, *other than his testimony in the case in which the issue arises,* are not admissible to prove agency." (Italics ours.) And at 353, Section 446, "Although an alleged agent's extrajudicial statements are not admissible to prove the fact of his agency, that fact may, when it rests in parol, be established on the trial by the testimony of the agent himself; he is a competent witness to prove the agency, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject."

The testimony of Bachelor was competent and should

be given the weight to which it is entitled.

On the evidence, including the testimony of the agent, there can be no doubt as to the authority of Bachelor to enter into this contract to make a lease. It shows that he had authority not only to contract to lease, but to actually lease. As between these parties, he actually created the relation of lessor and lessees with the prior knowledge and subsequent approval of the defendant. He placed the plaintiffs in possession of the premises. He collected rent from them. He remitted the rent and the defendant accepted it. Under such circumstances it seems idle to stop to analyze the evidence to demonstrate authority. It is conclusively proven. The facts from which the authority arises are admitted.

Counsel rely on *Hodesh* v. *Hallerman*, 45 Ohio App., 278, 186 N. E., 921, as supporting their contention that a defectively executed lease can never be enforced as an executory contract to make a lease, and it is true that there are expressions in the opinion in that case that lend support to their contention, but the decision can be supported on one of the grounds originally stated, and that was that the evidence failed to prove that the husband who signed the lease was authorized to execute a lease for his wife, the defendant. It is also distinguishable from the case at bar in that here there is no attempt to enforce a defectively executed lease as a contract, and here we have no difficulty in finding that the agent was duly authorized. The case has no application.

But it is urged that the contract is too indefinite to be specifically enforced. It is said that it makes no provision for the specific terms to be incorporated into the lease, and *Herley, Inc.*, v. *Harsch*, 61 Ohio App., 260, 22 N. E. (2d), 515, is cited in support of the necessity for such a provision as a condition of specific performance. We do not so construe that case. The

contract involved there contained provisions that were inherently indefinite. It provided for a lease on "a regular and customary form" and the court found there was no such form, but that there were more than one form extensively used. It provided for "customary arbitration provisions" and there was no evidence of the existence of any custom on the subject. There are no such indefinite provisions in this contract. The evidence proves a contract for a lease for two years from May 20, 1940, at $50 per month, payable in advance, with privilege of renewal for five years with a provision that the lessee make all necessary repairs and improvements at his own expense and only after receiving permission from the lessor and furnish the lessor with releases for labor and material used discharging the lessor and the premises from all liability on account of the repairs and improvements. There is nothing indefinite about these provisions and the contract contains no other indefinite provisions such as those in *Herley, Inc.,* v. *Harsch, supra,* which the court held prevented specific enforcement. As the plaintiffs were placed in possession of these premises by the defendant and valuable improvements have been made, the statute of frauds has no application. Such part performance takes the contract out of the statute according to all the authorities, and possession alone is sufficient according to the greater weight of Ohio authority. 19 Ohio Jurisprudence, 620, Section 98; 37 Ohio Jurisprudence, 111, Section 94. Therefore, in reaching a conclusion as to the terms of this contract we avail ourselves of all relevant evidence, written, oral and circumstantial. We find the terms to be clearly and definitely proven.

Now does the fact that the contract provides for a lease without any reference to its terms or form other than duration, rent and repairs and improvements create an indefiniteness preventing specific perform-

ance? We have found no case so holding. If the parties were satisfied with a simple lease of that kind, leaving their rights to be determined by the application of legal principles in all other respects, is there any rule of law or public policy that prevents it? We know of none.

The form of the decree is discussed in 25 Ruling Case Law, 345, Section 171. The author limits his discussion to the form of a decree for a deed, but we think the reasoning is equally applicable to decrees for leases when the contract makes no provision for covenants that are frequently incorporate in leases. The author says:

"A question sometimes arises as to whether the plaintiff in obtaining a decree for specific performance involving the execution of a deed is entitled to a deed with a clause of warranty. According to one view if the contract does not provide that the deed should be one with a warranty clause the court will not direct that the deed must contain such a clause. But in some jurisdictions it seems that the usual form of conveyance, with full covenants, may be decreed in an action for the specific performance of a contract to convey land, which does not require a conveyance in any particular form. The decree may be one requiring the execution of a quitclaim deed with covenants of warranty in common form against all persons claiming by, through, or under the defendant."

The exact form of the decree can be settled at a later date. The fact is that this action is no more than an appeal to the court to declare the terms of a tenancy that already exists. In 24 Ohio Jurisprudence, 755, Section 21, we find this statement:

"Where possession is given in pursuance of a contract to take a lease, and valuable improvements are made by the owner in reliance upon the contract, equity will consider the situation of the parties to be

the same as if a lease had been executed; and the situation of the parties has been so considered in an action at law.''

There is some evidence that some of the repairs and improvements were not paid for. There is no evidence that any claim had been asserted against the defendant or the demised premises.

In any event, this covenant does not constitute a condition precedent to the right to a lease. It would continue during the entire term. Had the lease been executed as agreed, the breach of this covenant would not have worked a forfeiture automatically. Whether a forfeiture would have been decreed would depend on the circumstances, one of which would be the attitude of the tenant toward curing the breach. In 24 Ohio Jurisprudence, 1156, Section 411, it is said:

''As in jurisdictions generally, a breach of a covenant or a promise by the lessee, such as a promise to keep the premises in repair, is not ordinarily a cause for forfeiture of the lease unless the lease so provides. Forfeiture is very rarely decreed unless specifically provided for in the lease.''

The general equitable rule is that time is not of the essence of a contract. 37 Ohio Jurisprudence, 81, Section 60. If there has been a failure to perform at the specified time, but the defaulting party is willing and able to perform at a later date, the court may decree specific performance upon such terms and conditions as justice and equity require, notwithstanding the default, and, of course, may and should require the performance by the plaintiffs of all obligations on their part to be performed at the time.

On the whole case the court finds the equities in favor of the plaintiffs. A decree for specific performance may be presented.

*Decree for plaintiff.*

Ross and Hildebrant, JJ., concur.