ARNOLD ET AL., APPELLEES, *v.* GRIMMEISSEN, APPELLANT.

(No. 8259—Decided March 18, 1957.)

*Mr. Edward J. Utz,* for appellees.

*Mr. Lawrence B. Swartz* and *Mr. John T. McHugh,* for appellant.

MATTHEWS, J.   This action arises out of the collision of the defendant's tractor with the rear of the automobile of plaintiff Arnold, hereinafter called plaintiff, which was parked on the right side of a public road.  It appears that the plaintiff had transferred a part of her claim for the damage resulting to her automobile from the collision to her insurer, Farm Bureau Mutual Automobile Insurance Company, and, after the action was instituted, the insurer was made a party to the action.

The plaintiff and her insurer allege that the defendant's son was operating the tractor as his agent on this particular Sunday, and that he was negligent in the operation thereof, thereby causing the collision and damage to the automobile.

The tractor had attached to it a machine used in spreading manure.

The defendant answered denying generally the allegations of the amended petition, which was filed after the insurer was made a party plaintiff and which sets forth the insurer's interest in the chose and prays for judgment for the amount of such interest.

As the result of a trial by jury, a verdict was returned for the plaintiff and insurer, and judgment was rendered on the verdict. This appeal is from that judgment.

It developed at the trial that the defendant's general denial was based on his contention that his son was not acting as his agent in operating this tractor on this occasion. Of course, the burden of proving that he was so acting was upon the plaintiff.

The plaintiff was the sole witness on her behalf as to the circumstances of this collision. Her testimony was undoubtedly sufficient to carry the case to the jury as to the negligence of the son. In addition, she testified as follows in reference to the son:

"Q. Did you ask him anything? A. I asked him how come he hit me. He said, well, that manure bucket up in front of him, he couldn't see. He says 'I simply didn't see you.'

"Q. Did you ask him anything else? A. I asked him what in the world do you have such a contraption as that on a highway like this on a Sunday afternoon, as pretty a day and everybody out? He says: 'I was going to my grandfather's to help my father spread manure.'

"Q. Did you ask him then where he was going? A. He said he was going to his grandfather's farm on Reemelin Road.

"Q. Did you ask him what he was going to do there? A. Spread manure. I asked him. Yes, sir.

"Q. You stated he said 'he was going to help his father spread manure'? A. That's right."

There was no objection as to the competency of this testi-

mony at the time, either by objection or by motion to have the jury instructed to disregard any part.

Plaintiff's counsel, apparently being in doubt as to the probative value of this testimony to prove agency or, at least, realizing that additional evidence was advisable, called the defendant to the stand as upon cross-examination. He testified that he was a tool and die maker and also owned a farm of 103 acres; that he worked in the city of Hamilton during the daytime, five days a week; that his son did work on the farm; that the son was 14 or 15 years old; that defendant had this tractor and manure spreader on the farm; and that his son, whose name was John, had operated it on the farm for about a year but had never operated it on the public road prior to this occasion and had never been given permission to take the tractor off the farm. Defendant testified that the tractor was on his farm before this Sunday and the key was in it, and that there was gasoline in a tank on the farm. He testified also that at the time he had two automobiles on the farm. He did not make clear whether these automobiles were passenger automobiles.

He said also that he and his family had been invited to have Sunday dinner with his father, 8 to 12 miles away, and that he, accompanied by his wife and their baby, was on his way to his father's home, when they arrived at the scene of this accident shortly after it had occurred.

He testified also that nothing was said as to how his son was to get to his grandfather's place.

He testified also that there was farm work to be done at his father's place, that he had helped from time to time, and that there had been some discussion about spreading some manure on his father's place, but that no arrangement for spreading it on that day had been made.

That part of defendant's testimony having to do directly with his knowledge of the son's use of this tractor on this occasion is as follows:

"Q. Well, on this particular December 27, 1953, was there work to be done with the tractor on your father's farm? A. No, not necessarily.

"Q. Not necessarily. Do you know where your boy was taking this tractor? A. I didn't know he had the tractor.

"Q. You didn't know he had the tractor. Isn't it a fact that your father had some manure that was to be spread over on his farm and that your boy was going over there with it, with the tractor, to work for him? A. My boy, if he did this thing, which is brought out in the accident, left of his own accord and I ran on to it as I approached the accident.

"Q. In other words, your boy took this Ferguson tractor off of the farm and drove it down the road. You don't know where he was going? A. I didn't even know he had the tractor.

"Q. You didn't even know he had the tractor, and he done it on his own accord, is that right? A. That's correct.

"Q. You had nothing to do with it? A. Not one thing.

"Q. When you left to go over to your father's residence or your father's home this Sunday, did you inquire as to the whereabouts of your son, who was also invited with you? A. No, I didn't.

"Q. You didn't. You didn't look in to see what farm equipment was on your farm at that time. A. I don't go out in the garage and look if the car is in there or my tractor is in there before I leave at any time.

"Q. Did your boy have permission to operate this tractor? A. He had permission on the premises.

"Q. On the premises. Do you know if he operated this tractor that Sunday morning on the premises? A. I don't know, sir. I was in the house."

The foregoing is all the evidence introduced by plaintiff bearing on whether the son was acting as his father's agent in and about his business on this occasion. The court overruled the defendant's motion for an instructed verdict.

The defendant took the witness stand but added nothing of a material nature to his testimony already given on cross-examination. He did say that the family had breakfast together that Sunday morning, that his son left the house shortly thereafter, that he did not see him thereafter or know where he was, that he—the witness—was busy that morning and did not see his son leave with the tractor, and that his son had not asked his permission to use the tractor on that occasion.

Thereupon the son, John Grimmeissen, was placed on the witness stand. We quote from his testimony:

"Q. Now, on this particular day, John, where were you going? A. To my grandpa's.

"Q. Where did he live, John? A. On Reemelin Road.

"Q. How did you proceed to get there? A. On a tractor.

"Q. Whose tractor was it? A. My father's.

"Q. Now, did you say anything to your father that day about the tractor? A. No.

"Q. Did he, to your knowledge, know if you had the tractor? A. No.

"Q. How did you happen to take the tractor without his knowledge? A. Well, I was parked and I just took off with it.

"Q. Had you ever driven on the road before with that tractor? A. No.

"Q. How long have you been driving it? A. I don't know.

"Q. Before, I mean, the accident? A. I wouldn't know.

"Q. I see. Now why did you take the tractor to your grandfather's farm on that day? A. Well, I was going to spread some manure for him.

"Q. Who asked you to spread that manure? A. No one.

"Q. How did you know that your grandfather wanted that done, then? A. Well, he spoke of it sometimes, my grandpa.

"Q. Now, when was that spoken about? A. Oh, I don't know when it was exactly.

"Q. Who spoke about it? A. My grandfather.

"Q. What did he say? A. I don't know what he said. He just talked about he needed his manure spread.

"Q. How did you happen to go about taking the tractor to spread that? A. Well, I just—it was parked in our yard and I went over there and decided I was going to spread it for him."

Neither upon direct examination nor upon cross-examination was the witness asked whether he had told the plaintiff that he was going to his grandfather's farm to spread manure for his father.

It was vital for the plaintiff to prove that John Grimmeissen—the son—was acting with the knowledge of and for his father.

It is the opinion of my associates that there is sufficient evidence tending to prove agency to require the submission of the issue to the jury. In this conclusion I find myself unable to concur.

Certainly, there is nothing in the testimony of the defendant and his son tending to prove that the latter was authorized by the former to operate that tractor on the public highway on that Sunday to serve some purpose of the former. If they are believed, their testimony conclusively proves the contrary. If their credibility is entirely destroyed, it would mean that their testimony should be entirely disregarded. It would not mean that it could be transformed into evidence that an agency existed.

If it is correct that the testimony of the father and son did not tend to prove agency, then the only other item of evidence that bears in any way upon the issue is the testimony of the plaintiff that the son said at the scene of the accident that "I was going to my grandfather's to help my father spread manure." Now, assuming the competency of this testimony and the capacity of the witness to bind his father by that statement, does it have any tendency to prove that the father either expressly or impliedly directed the witness to operate the tractor on the public highway to his father's place? Assuming that it was the intent of the son to take the tractor to his grandfather's place to help his father, does that have any tendency to prove that the father knew about it, or that that was even the father's covert intent? Certainly, mere permission by the father or an uncommunicated intent on the part of the son to help the father would not make the son the agent of the father in operating this tractor. Were this an action on contract in which plaintiff claimed that the defendant had contracted with her through his agent, her testimony that the person with whom she actually dealt had told her that he was acting as agent for the defendant would be no proof as against the defendant.

Even assuming that what the plaintiff testified to could be construed into a statement that the father had directed the son to operate the tractor to his grandfather's place, could this statement be employed to prove agency? It seems to me that, unless and until the declarant has been established as an agent by proof otherwise, his statements are completely ineffective against the defendant. *Reck* v. *Daley,* 72 Ohio App., 307, 48 N. E. (2d), 879. Such a statement is clearly incompetent and ir-

relevant until the authority is proved. On this subject, it is said in 2 Ohio Jurisprudence (2d), 284, Section 200:

"In other words, while it is competent, in actions to charge another with contracts made by an alleged agent, to show that the agent assumed to act in a representative capacity, the agent's own declarations are not competent to maintain the allegation as to his authority, or to extend his authority in particular matters. An agent cannot enlarge his own authority by an unauthorized representation as to its extent, unless the existence of the agency is established by independent evidence, and then the agent's own declaration may be given to show the nature and extent of his authority."

See, also, *Bradford Belting Co.* v. *Gibson,* 68 Ohio St., 442, 67 N. E., 888; and *Golenternek* v. *Kurth* (Ark.), 212 S. W. (2d), 14, 3 A. L. R. (2d), 593, and annotation, in which is disclosed that the uniform tenor of decisions in all jurisdictions supports the rule excluding ex parte declarations of the claimed agent to prove agency.

Of course, a claimed agent is a competent witness as to his dealings with another, either to prove or disprove that he is that other's agent. In 2 American Jurisprudence, 352, Section 445, it is said:

"It is well established that the admissions, statements, and declarations of an agent, other than his testimony in the case in which the issue arises, are not admissible to prove agency. Indeed, there must be prima facie proof of agency before such declarations or statements are admissible for any purpose."

So, it is my conclusion that the record fails completely to show that the son was acting for and on behalf of the defendant, his father, at the time of this collision, and that, therefore, this judgment should be reversed, and final judgment entered for the defendant. Although my associates agree, as will be hereinafter shown, that the judgment should be reversed, they do not agree that final judgment should be rendered.

As already noted, the defendant did not object at the time to the plaintiff's testimony that the son told her that he was going to his grandfather's place to help his father spread manure. No question was raised until after the court had con-

cluded the general charge to the jury. Thereupon, defendant's counsel requested the court to "instruct the jury upon the law to the effect that the jury cannot determine agency upon the statements of the agent alone, but only in conjunction with other facts showing or implying agency." The court refused this request, to which the defendant excepted.

An examination of the charge shows it to be a full and correct statement of the law relating to the issues in this case, but the charge does not contain any statement of the manner of proving agency or the probative value of ex parte extrajudicial statements of a claimed agent to prove his agency. That was the only issue upon which liability depended in this case, and counsel's request called the court's attention to the failure of the court to adequately cover that subject in its charge. Section 2321.03, Revised Code. The failure to so charge was clearly prejudicial.

We are of the opinion that the court erred in refusing counsel's request for a further charge on that subject.

And we also find that the verdict is manifestly against the weight of the evidence.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

HILDEBRANT, P. J., and LONG, J., concur.