CASTRUCCI ET AL. *v.* YOUNG ET AL.

(No. 85-CV-0854 — Decided
August 4, 1986.)

Court of Common Pleas of
Clermont County.

*Thomas R. Schuck,* for plaintiffs.
*Allen Burreson,* for defendant
Young.
*Flach Douglas; Frost & Jacobs* and
*Gary L. Herfel,* for defendant Frazier-
Williams.

RINGLAND, J. This matter came
before the court on motions for sum-
mary judgment filed by plaintiffs, Al
and Faye Castrucci, and the defendant
corporation known as Frazier-Williams.
This action came originally before the
court as an action for declaratory judg-
ment, injunctive relief and damages
with respect to the purchase and sale
of property owned by defendant
Beulah Huff Young and presently used
by Frazier-Williams as a used car lot.

The facts as shown in the deposi-
tion and affidavits are undisputed. On
January 8, 1980, Frazier-Williams en-
tered into a lease with Young. Young
agreed to rent, for a maximum of eight
years, two acres of property to be used
by Frazier-Williams for the business of
selling used cars. The lease at para-
graph 16(b) provided that in the event
Young should elect to sell all or any
portion of the leased property during
the term of the lease that Frazier-
Williams had (1) the right to purchase
the property at a reasonable market
value and (2) the right of first refusal
to meet any bona-fide offer of sale on
the same terms and conditions of such
offer, provided it was required to pur-
chase on or meet such bona-fide offer
within thirty days after notice thereof.
If Frazier-Williams failed to do so,
Young "shall be free to sell the prem-
ises or portion thereof to such third
person in accordance with the terms
and condition of his offer."

On or about August 9, 1985,
Young contracted with Al and Faye

Castrucci to sell the property to them for purposes of an auto dealership. The contract to purchase provided that the plaintiffs would pay Young $200,000, plus a Crown Victoria automobile valued at $14,400, and a 1985 Ford F150 Pickup truck valued at $15,000, for a total of $229,399. The purchase price for these two acres of land was to be paid in the following terms: $1,000 advanced as earnest money, an additional $49,000 paid at closing and the delivery of the motor vehicles and balance to be paid under the terms of a note from plaintiffs. The note was to be secured by a mortgage and a pledge by plaintiffs of $150,000 worth of unencumbered bonds. The earnest money was delivered to Young at the time the contract was executed and the plaintiffs held themselves out as ready, willing and able to close the sale of the property according to the terms of the contract.

Young notified Frazier-Williams of the contract, provided an officer of the corporation with a copy of the contract, and gave further written notice to the defendant corporation on or about August 22, 1985 of her intention to sell the property to plaintiffs in accordance with paragraph 16(b) of the lease.

On or about September 6, 1985, an attorney for Frazier-Williams wrote to Young acknowledging her August 22 letter and asking for additional information concerning the terms of the contract. Young replied on September 13, 1985 and again provided a copy of the contract and further informed Frazier-Williams that she expected the corporation to inform her of its decision whether or not to exercise its rights under paragraph 16(b) of the lease within thirty days of its receipt of her August 22 letter. Frazier-Williams responded to plaintiffs' offer by correspondence from its attorney setting forth a counteroffer to purchase the property. In this letter, Frazier-Williams acknowledged the fair market value of the property to be the purchase price specified in plaintiffs' contract and proposed to purchase the property essentially on the terms set forth in that contract but with certain enumerated exceptions: (1) a down payment on the purchase price in the range of "a minimum of $80,000 to a maximum of $100,000," (2) the substitution of an automobile and a truck, while of different makes, of comparable value to the vehicles specified in the contract, and (3) the exclusion of the security of the unencumbered bonds which plaintiffs had agreed to pledge to Young to secure the balance of the purchase price in addition to the note and mortgage. Young never signed the agreement to sell the property to Frazier-Williams nor did she sign anything accepting the terms offered in that letter. The counteroffer never became more specific than to pay a minimum of $80,000 to a maximum of $100,000 down with a balance to be secured by note and mortgage. Nevertheless, Young and Frazier-Williams proceeded to set a closing for October 4, 1985. Three days before the closing date plaintiffs filed a motion for temporary restraining order and preliminary injunction. This court granted a temporary order restraining defendants from closing until further hearing. The matter was heard before another judge of this court who granted the preliminary injunction further restraining the parties from closing until the final hearing on the merits or a motion for summary judgment. This matter came before the court, therefore, on or about June 11, 1986, after the taking of depositions and affidavits submitted on both plaintiffs' and defendants' motions for summary judgment.

There is a paucity of relevant Ohio case law on the specific issues before

the court. Both movants have thus cited authority from other jurisdictions in support of their respective views. Although option clauses in leases are drawn similarly, they are different enough to make these cases merely illustrative. The principles behind them and the specific clause in question must be closely analyzed to reach a decision on the exact meaning of the option, which is equitable to both parties. *Shell Oil Co.* v. *Prescott* (C.A. 6, 1968), 398 F. 2d 592, certiorari denied (1969), 393 U.S. 1017.

It is agreed that the defendants entered into a lease agreement on January 8, 1980. Paragraph 16(b) of that lease reads as follows:

"(b) Should Lessor, during the lease term, or any extension thereof, elect to sell all or any portion of the leased property, whether separately or as a part of the larger parcel of which the leased property is a part, Lessee shall have the right to purchase the property at a reasonable market value. Lessee shall also have the right of first refusal to meet any bona fide offer of sale on the same terms and conditions of such offer. Upon Lessee's failure to purchase or to meet such bona fide offer within 30 days after notice thereof from Lessor, Lessor shall be free to sell the premises or portion thereof to such third person in accordance with the terms and conditions of his offer."

The point of contention between the parties is how the two rights afforded the lessee in the lease, the option to purchase at a reasonable market value and the right of first refusal of a bona-fide third-party offer, are to be construed.

Plaintiffs argue that the two rights are conjunctive and essentially one option, which can be exercised by the lessee in only one of the two ways spelled out above, depending upon the circumstances. They urge that the right to purchase at a reasonable market value can only be exercised in the absence of a bona-fide offer by a third party. When such a third-party offer exists, they contend, the lessee must meet such offer on the same terms and conditions or all the lessee's rights to purchase the property are lost.

Plaintiffs urge that since defendant-lessee failed to exercise its right of first refusal by not meeting plaintiffs' offer on its same terms and conditions, such failure extinguished its option to purchase the property at its reasonable market value; such option not having been expressly reserved in the lease in the event of sale. There are cases supporting such a position. See *Shell Oil Co.* v. *Blumberg* (C.A. 5, 1946), 154 F. 2d 251; *Texaco, Inc.* v. *Rogow* (1963), 150 Conn. 401, 190 A. 2d 48; *Amoco Oil Co.* v. *Kraft* (1979), 89 Mich. App. 270, 280 N.W. 2d 505; *Adams* v. *Helburn* (1923), 198 Ky. 546, 249 S.W. 543. In *Shell,* the lessee's failure to exercise a first-refusal right was held to have extinguished a right to purchase at a fixed price, due to the clause's language which expressly reserved to the lessee its rights under the former but not the latter right in event of sale. In *Texaco, Amoco* and *Adams,* the fixed-price options were also said to have been extinguished by failure to exercise first-refusal rights. In those cases, however, the prices to be paid under the fixed-price options were far below the actual market value of the properties in question, and the reasoning of those courts was based on the premise that it would be inequitable to allow a lessee who would not bargain to purchase at a price representative of market value to benefit from the exercise of an option with a price set unrealistically low. Such a decision, reasoned these courts, would freeze the value of the property at the price reflected in the fixed-price option, and no third party would be

willing to offer a more realistic price for the property, since the lessee could undercut it. This reasoning is obviously inapposite here, since the lease in question contains not a fixed-price option, but a right to purchase at a reasonable market value, which the parties agree is the price offered by the plaintiffs.

Defendant-lessee contends that the two rights it owned by virtue of the lease were disjunctive, alternative rights which it could choose between when it elected to purchase. Authority from other jurisdictions also supports this view. See *Texaco* v. *Creel* (1984), 310 N.C. 695, 314 S.E. 2d 506; *Sinclair Refining Co.* v. *Clay* (N.D. Ohio 1951), 102 F. Supp. 732, affirmed (C.A. 6, 1952), 194 F. 2d 532; *Shell* v. *Prescott, supra; Cities Service Oil Co.* v. *Estes* (1967), 208 Va. 44, 155 S.E. 2d 59; *Butler* v. *Richardson* (1948), 74 R.I. 344, 60 A. 2d 718. *Texaco, Sinclair,* and *Shell* upheld lessees' rights to exercise fixed-price options in the face of their failure to meet third-party offers due to clauses in the leases expressly reserving such rights. *Cities* allowed a lessee to purchase a piece of property by exercising its first-refusal right and meeting a third-party offer, even though it refused to exercise a fixed-price option which would have required it to pay more for the property. The *Butler* court, in construing an option clause similar to that in the instant case, held that a first-refusal right had no effect on a fixed-price option, and that the lessees could choose to exercise the latter after their notification of a third-party offer. Neither this court nor, apparently, the parties, have been able to locate any Ohio cases dealing with the effects of dual options upon each other in a single lease. However, this court finds the last line of cases most persuasive and holds that nothing prevented the lessee-defendant, who held an option to purchase at a reasonable market value, from exercising it

instead of meeting plaintiffs' third-party offer. This is the most reasonable construction of the clause in issue since it retains the lessee's option and right of first refusal and gives the lessor the right to sell to a third party upon the lessee's "failure to purchase or to meet" the third-party offer. Lease paragraph 16(b). See, also, 1A Corbin on Contracts (1963) 491, Section 261B.

Like all other contracts, it is necessary that an option to purchase in a lease be definite and certain as to the price of the property and such requirement is generally fulfilled where the option provision specifies a definite price or provides a mode whereby the price can be readily ascertained. See 49 American Jurisprudence 2d (1970) 386, Landlord and Tenant, Section 369; Annotation, Requisite Definiteness of Price to be Paid in Event of Exercise of Option for Purchase of Property (1965), 2 A.L.R. 3d 701; 77 American Jurisprudence 2d (1975) 213, Vendor and Purchaser, Section 33, and cases cited therein.

Plaintiffs contend that an option which affords a lessee the right to purchase a parcel of land for its "reasonable market value" is too indefinite for enforcement. Plaintiffs' reliance on *Trammell* v. *Morgan* (App. 1957), 80 Ohio Law Abs. 251, 158 N.E. 2d 541, for support is misplaced. There, the Mahoning County Court of Appeals held that a contract in which a boxer's manager agreed to purchase a home for him "at a fair price" was too indefinite for enforcement. However, where as here the price to be paid is that of the reasonable market value, the courts have upheld the certainty of the contract price since that value can be readily ascertained by obtaining offers for sale. See *Miller* v. *Bloomberg* (1975), 26 Ill. App. 3d 18, 324 N.E. 2d 207; and *Portnoy* v. *Brown* (1968), 430 Pa. 401, 243 A. 2d 444. Although no

reported cases in Ohio deal with the required definiteness of the option price in a lease, at least two Ohio courts have pointed out that the reasonable market value of goods can generally be readily ascertained, and that the phrase is not thus subject to objections on the ground of a lack of certainty. *Mose Cohen & Sons, Inc.* v. *Kuhr* (C.P. 1959), 13 O.O. 2d 453, affirmed (App. 1960), 13 O.O. 2d 460; and *Preston* v. *First Bank of Marietta* (1983), 16 Ohio App. 3d 4, 16 OBR 4, 473 N.E. 2d 1210. The reasonable market value of a piece of property such as that owned by Young is readily ascertainable by placing it on the market for sale, and indeed the value of her property has been determined by the plaintiffs' offer, which all parties agree was $200,000 plus two motor vehicles worth approximately $30,000. Thus, the price was and is sufficiently definite.

Plaintiffs further argue that other terms, necessary to the formation of a contract, are missing from the option, making it unenforceable. They cite for that proposition *Sander* v. *Schwab* (1925), 315 Ill. 623, 146 N.E. 509, and *Bean* v. *Holmes* (Tex. Civ. App. 1921), 236 S.W. 120, both of which held that an option not spelling out specific terms and conditions of sale is too indefinite for specific performance. See, also, *Lewis* v. *Lockhart* (Alaska 1963), 379 P. 2d 618; *Roberts* v. *Adams* (1958), 164 Cal. App. 2d 312, 330 P. 2d 900; *Bonk* v. *Boyajian* (1954), 128 Cal. App. 2d 153, 274 P. 2d 948; *Parsons* v. *Hall* (1947), 184 Tenn. 363, 199 S.W. 2d 99; and *McCreight* v. *Girardo* (Ore. 1955), 280 P. 2d 408, vacated on other grounds upon rehearing (1955), 205 Ore. 223, 287 P. 2d 414, all with like holdings. A number of cases, however, hold that where a lessee tenders cash for the property, or gives the lessor an opportunity to choose between cash and suitable financing, the lack of financing terms in the option does not make it indefinite. See *Morris* v. *Ballard* (C.A.D.C. 1926), 16 F. 2d 175; *Matlack* v. *Arend* (1949), 2 N.J. Super. 319, 63 A. 2d 812; *Swedish-American Natl. Bank* v. *Merz* (S.Ct. 1919), 179 N.Y. Supp. 600; and *Taylor* v. *Wells* (1950), 188 Ore. 648, 217 P. 2d 236.

An agreement is enforceable if it encompasses the essential elements of the bargain. *Reck* v. *Daley* (1943), 72 Ohio App. 307, 27 O.O. 153, 48 N.E. 2d 879; *Stiegelmeir* v. *West Side Deutscher Frauen Verein* (App. 1961), 88 Ohio Law Abs. 97, 20 O.O. 2d 368, 178 N.E. 2d 516; *Perlmuter Printing Co.* v. *Strome, Inc.* (N.D. Ohio 1976), 436 F. Supp. 409. The terms of financing of the purchase are not essential parts of an option to purchase land. All that need be required is a promise to pay an agreed consideration. See *Swedish-American, supra.* However, where such terms are omitted, the only way in which the contract could be enforced is if cash or financing suitable to the lessor were offered for the property, making the financing terms unimportant. This court could infer that cash was to be the scheme of payment if no terms were spelled out in the option, *St. Xavier College* v. *Briggs* (1910), 13 Ohio C.C. (N.S.) 401, 23 Ohio C.D. 468, but it could not create new terms for the parties which they failed to put into the contract. *Herder* v. *Herder* (1972), 32 Ohio App. 2d 75, 61 O.O. 2d 62, 288 N.E. 2d 213.

Frazier-Williams seeks to have the court declare that it has the right to purchase the property in question, at some undefined financing terms. But the option herein is really, if read in the light of a lack of financing terms, an agreement to make a future agreement, which is nugatory and of no effect if sought to be enforced on those terms. See *G. M. Corp.* v. *Keener Motors* (C.A. 6, 1952), 194 F. 2d 669, 48 O.O. 318; *Joseph* v. *Doraty* (App. 1957), 77 Ohio Law Abs. 381, 144 N.E.

2d 111. However, if the lessee were to have offered cash or financing terms suitable to the lessor, this court, in construing the contract, would hold that the clause is not too indefinite for enforcement. This failure to so offer, however, is not fatal to the lessee. Assuming the lessor's extension of time to purchase was valid, then it is possible that a closing may indeed have occurred on October 4, 1985, at which the parties may have agreed to a suitable financing package. If indeed that had occurred, this court could find that the lack of terms was not fatal to the enforceability of the contract, since an acceptable agreement had been arrived at, which supplemented the option and made the lack of terms irrelevant. Since any closing that may have occurred was stopped by the pendency of this action and the restraining order issued, this court cannot say that all reasonable minds must find that a closing could not have occurred. Thus, summary judgment cannot be granted to plaintiffs on this issue.

Lessee-defendant's purchase option required the lessee to *purchase* the property within thirty days after notice of lessor's election to sell it. Paragraph 16(b) of the lease. Admittedly, this was not done. However, lessee-defendant contends that Young's letter of August 22, 1985 extended that time an additional fifteen days. Parties to an executory contract can modify that contract as they wish, and their mutual waiver of rights under the contract is sufficient consideration for the change. *Murrell* v. *Elder-Beerman Stores Corp.* (C.P. 1968), 16 Ohio Misc. 1, 45 O.O. 2d 13, 239 N.E. 2d 248; *Phelps* v. *Logan Natural Gas & Fuel Co.* (1920), 101 Ohio St. 144, 128 N.E. 58. In *Franck* v. *Seavey Mfg. Co.* (1926), 21 Ohio App. 369, 153 N.E. 209, the court held that a letter sent to an optionee extending the time within which to exercise the option was valid and, though without consideration, could be revoked only before acceptance. In the instant case, the lessor extended the time within which the lessee had to actually purchase the property by fifteen days, thus requiring the lessee, within the original thirty-day period, only to notify the lessor that it wished to exercise its option. This was a new unilateral agreement, subject to revocation any time before acceptance. See *Franck, supra*; and *Bretz* v. *Union Cent. Life Ins. Co.* (1938), 134 Ohio St. 171, 11 O.O. 587, 16 N.E. 2d 272. Notice by the lessee of an intent to purchase is an adequate acceptance of the offer, which, absent other terms, sets up a promise to pay at the time the deed is delivered. *St. Xavier College, supra.* Here, then, acceptance of the offer was accomplished by defendant-lessee's letter of September 20, 1985. The law will imply that this was a promise to pay in cash when the deed was tendered at the closing, unless adequate financing terms were accepted by defendant-lessor at that time, as noted above. Because a closing was never held, due to the restraining order issued, reasonable minds could differ as to whether or not a sale to Frazier-Williams may have occurred within forty-five days after notice of Young's election to sell the property.

Assuming, *arguendo,* that lessee-defendant's purchase option was indeed indefinite or otherwise unenforceable, its election to purchase should be reviewed to determine whether it could be construed as an exercise of its right of first refusal to meet a bona-fide offer from a third party. This right required lessee-defendant to meet such offer "on the same terms and conditions of such offer." Plaintiffs contend that since their offer contained a different financing arrangement than lessee-defendant's, this obligation was not met, and the

right was forfeited, giving plaintiffs the right to purchase the property. It is, of course, conceivable that, although defendant-lessee had proposed terms dissimilar to those proposed by plaintiffs, that, if defendant-lessor had contrived to refuse those terms, defendant-lessee may have offered terms identical to those offered by plaintiffs, by the time the forty-five days allowed by the extension had elapsed. Since reasonable minds can come to such a conclusion, plaintiffs' motion for summary judgment would be denied on those grounds too. However, if the defendant-lessee did indeed not meet plaintiffs' offer exactly by the time of the closing, and instead continued to propose the financing terms it wished, it would be necessary to determine whether those terms and conditions were the "same" as those offered by plaintiffs. In *Hudson Amusement Co. v. Smith* (Ohio App. 1945), 34 O.O. 162, 65 N.E. 2d 881, the Franklin County Court of Appeals held that a lease option giving the lessee a right of first refusal to purchase a theater on the same terms offered by a third party was not complied with when the lessor required additional terms from the lessee not required from the third party. The principal differences were requirements that the lessee obtain the signature of a specified guarantor and that he release the lessor from certain indebtedness previously owed. The court held that these were substantial and material differences.

Likewise, here, Frazier-Williams offered a financing package substantially and materially different than that offered by plaintiffs. The down payment and collateralization proposed differ sharply from those offered by plaintiffs. This court finds these differences substantial and material and notes that, if Frazier-Williams had to rely on its first-refusal right, it would have no right to purchase the property since its offer lacks the required identity. See, also, *Yager v. Dill* (S.Ct. 1947), 71 N.Y. Supp. 2d 864, affirmed (App. Div. 1947), 74 N.Y. Supp. 911.

In summary, then, the options contained in the lease were valid offers to sell property entered into by parties competent to contract. Defendant-lessee Frazier-Williams could choose to exercise either after Young's election to sell in strict conformance with the terms. It had such a right beyond the thirty-day time period originally agreed to in the option due to Young's letter. It had the right to purchase for a reasonable market value, but only if it offered cash or financing acceptable to Young. It also had the right to purchase on the same terms and conditions offered by plaintiffs. Because of the restraining order issued on October 2, 1985, lessee-defendant's opportunity to consummate a purchase on or before October 4 was thwarted. Thus, leaving aside whether or not such a sale could have actually occurred, lessee-defendant should have an additional three days to attempt to come to an agreement with its co-defendant regarding a sale of the property. Thus, since no genuine issues of fact are in dispute and Frazier-Williams desires judgment as a matter of law, this court will grant Frazier-Williams' motion for summary judgment and hold that it has the right, as enumerated above, to purchase the property in question, conditioned upon its tendering cash or offering financing terms suitable to its co-defendant if exercising its purchase option, or upon its meeting plaintiffs' offer if exercising its right of first refusal. This court notes that if Frazier-Williams tenders cash or meets plaintiffs' terms and conditions within the time allotted, Young is obligated to sell the premises to it. However, if within the time allotted it offers financing terms to

Young who, dealing in good faith, finds them unacceptable, the option is extinguished and she may sell the property to plaintiffs.

Because this court has found, as a matter of law, that Frazier-Williams has a limited right to purchase the property in question and has granted its summary judgment motion to that effect, plaintiffs' damages claim is found to be not well-taken.

In summary and in light of the above, lessee shall have three days remaining in its option to purchase or to meet the third parties' offer and that the three-day period shall begin once this decision is journalized in accordance with Local Rule 15.

*Lessee's motion for summary judgment granted.*