EDELEN TRANSFER & STORAGE CO. v. KATHRYN WILLIS.

Eastern Section.   August 6, 1932.

Petition for Certiorari denied by Supreme Court, October 15, 1932.

Ben. H. Testerman, of Knoxville, for appellant.
Jennings & Wright, of Knoxville, for appellee.

PORTRUM, J.   This is a suit brought by the Edelen Transfer & Storage Company, a Tennessee corporation, to recover from the defendant, Kathryn Willis, Administratrix of the estate of C. D. Willis, deceased, in the sum of $600 upon the following written instrument, supplemented by a contemporaneous oral agreement, to be hereinafter stated:

"Edelen Transfer & Storage Company,
"Knoxville, Tennessee.

"Gentlemen: Attention Mr. H. E. Edelen.

"With reference to order taken from you on blank date, wish to advise that I personally will guarantee that we will sell the oldest model Mack that you now own for your account for $600.   It is understood that this agreement by me personally does not in any way involve the Mack International Motor Truck Corporation and should there be any loss in

connection with the above guarantee said loss comes from me personally.

"Yours very truly,
"C. D. Willis."

Mr. Willis was the manager, and in control of the sales force, of the branch office of the Mack International Motor Truck Corporation, at Knoxville, and was employed upon a stipulated salary, plus a bonus determined upon the basis of the amount of business done by the corporation through the agency or branch during the current year. In February, 1929, at the time of the execution of the above copied agreement, the corporation had placed upon the market a new truck, designated as Model BB. In the sale of its trucks the corporation did not permit its branch agencies to take in old trucks, or used cars, as a part of the purchase price of a new truck. Other agencies selling other makes of trucks were following this practice, and this proved an obstacle in the way of the sales force in the sale of this corporation's trucks. This obstacle had to be overcome when the prospective purchaser had a used truck he wished to trade in upon the purchase of a new truck, and could be overcome only by convincing the purchaser of the superior quality of the Mack truck, or by other means.

The complainant, the transfer company, was in 1929 and had been for a long time before this time a constant user of Mack trucks, and at the time of the agreement was operating five motor trucks and vans, all of them being Mack trucks and all of them purchased through the Knoxville agent. On or about February 8, Mr. Willis, the manager of the branch office, began negotiations with Mr. Edelen to sell the transfer company one of the new BB model trucks, or the chassis, with the understanding that a Knoxville concern would build the body on the chassis, and Mr. Edelen was in the market to purchase the truck, but since he was operating five trucks he wanted to trade in as a part of the purchase price his oldest truck in use, but the rules of the corporation would not permit the agency to accept an old truck as a part of the purchase price. Other truck manufacturers were doing so, and Mr. Edelen was determined to trade in his oldest truck in the purchase of the new truck, but he wanted a Mack truck and the negotiation stood impassive for a while. Finally this difficulty was eliminated by the execution of the above quoted instrument, supplemented by a verbal agreement, which we will here state. It was agreed that the transfer company would sign a sales contract for the purchase of the chassis, and the body when built, and execute notes for the purchase price, payable in monthly installments, and aggregating approximately $4000. That if the written contract entered into by Mr. Willis and the transfer company,

and above set out, was not performed by sale of the old truck at the price of $600, when the last of the purchase money notes aggregating $600 fell due, then that Willis would take up and discharge these notes in satisfaction of his guarantee, and he would then be entitled to the old truck. The sales contract was executed February 8, 1929, and the truck in its completed form was delivered about the first of March, when notes for the deferred monthly installments in payment were executed. The used Mack truck was delivered by the transfer company to the branch office for sale about March 1, 1929.

On April 6, 1929, C. D. Willis met his death in an automobile accident near Calhoun, Georgia. The Mack used truck was never sold by the branch office, and upon maturity of the purchase money notes for the new truck the transfer company paid them, and then made demand upon Willis' administratrix to fulfill the written guarantee executed by Willis, by the payment to it of $600. This demand was not complied with and this suit was instituted.

The defendant sets up as a matter of defense that the written agreement was an executory agreement for the performance of a personal service and the death of C. D. Willis, prior to the date of the performance of said agreement, had the effect to, and it did, cancel this agreement, and that the defendant is not bound by any of the terms or provisions thereof.

Two depositions were taken on behalf of the complainant, one was the deposition of Mr. Edelen, general maanger of the transfer company, and the deposition of Mr. B. VanHosen, an officer or agent of the branch office under the manager, Mr. Willis. The defendant introduced no evidence. The Chancellor heard the cause and gave judgment in favor of the complainant for the sum of $300, and from the decree the defendant has appealed to this Court, assigning three errors. The first reads:

"The Chancellor erred in not finding and decreeing that the written agreement herein sued upon was an agreement for the performance of a personal service, and that the death of C. D. Willis, prior to the date of performance of said agreement had the effect of, and did, cancel same and relieve the estate of the said C. D. Willis from any liability thereon."

This assignment announces a sound rule of law, and our only inquiry is to determine if the facts of this case bring it within the rule announced. We will quote briefly from the authority which announced the rule.

"Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive and shall be capable of performing the contract, so that death or disability will operate as a discharge. The right to regard the

contract as discharged by the death of a party is reciprocal and a party whose personal representative would not be bound to perform in case of his death cannot on the death of the other party charge such party's representative.'' 13 Corpus Juris, p. 644, Sec. 719.

In the case of Cox v. Martin (Miss.), 36 L. R. A., 800, the Court says:

''Recurring, now, to the main question, it is clear that wherever the continued existence of the particular person contracted with—the contract being executory—is essential to the completion of the contract, by reason of his peculiar skill or failure, this terminates the contract, as, for example 'contracts of authors to write books, of attorneys to render professional services, of physicians to cure particular diseases, of teachers to instruct pupils, and of masters to teach apprentices a trade or calling.' So, also, when the continual existence of a particular thing is essential to the completion of a contract, the destruction of the existence of the thing—its death—terminates the contract; as in contracts for the sale of specific chattels, or for the use of a building—they cease to exist. 1 Beach Modern Law of Contracts, Sec. 773, page 946, Note 3, with the authorities cited. 'But where the contract with the deceased is executory, and the personal representative can fairly and fully execute it, as well as the deceased himself could have done, he may do so, and enforce the contract.' ''

Now, is this personal element the essence of the contract under review? The witnesses state that Mr. Willis was an expert salesman, and highly capable of personally selling this truck for the stipulated price. But it was expected, or contemplated, that he would give his personal attention in making the sale; and upon this evidence the defendant bases her defense that the facts bring the case within the rule, since his personal capacity was within the contemplation of the parties. The testimony of the two witnesses lends force to this argument, but upon close examination it will be seen that they attempt to construe the written contract, and this is the function of the Court.

We will attempt a construction of this written agreement. We will quote again the first sentence: ''With reference to order taken from you on blank date, wish to advise that I personally will guarantee that we will sell the oldest model Mack that you now own for your account for $600.'' It is the duty of the Court to give effect to every word its common, accepted use. The use of the pronoun ''we''—which is the plural of ''I'' and includes the writer with another, or others,—indicates to our mind Mr. Willis contemplated that the sales force of his agency would make the

sale of the used truck. Mr. Willis wrote this agreement with pencil on a yellow sheet of paper, and we conclude that he intended to embody in it his agreement. He uses the expression "I personally will guarantee that we will sell . . ." and the accepted meaning of the word "guarantee" is "A promise to answer for the payment or performance of another." Therefore, if Mr. Willis understood the language he used, he was promising that his sales force, which included himself, would make the sale, and in default he personally would answer for the performance of another, i. e., the sales force. It would have been unnecessary to have made any guaranty if Mr. Willis contracted to render personal services only, and it is our duty to construe the contract so as to give effect to every word, when it can be done with reason. This construction negatives the intent of personal capacity as the essence of the contract. And the fact that the agreement was for a sale at the price of $600 also tends to negative a purpose to rely upon the personal capacity of the seller. If a person contracts to sell an article within a certain time for $600, or answer the loss occasioned by a failure to sell, then it becomes immaterial to the one employing him whether he is a man of experienced salesmanship or not, for he is protected against inferior salesmanship.

We think the lower court correctly construed this agreement and the first assignment is overruled. The second assignment complains as to the amount of the recovery on the theory that the complainant suffered no loss, since the truck was worth $600 at the date of Willis' death. The complainant could not complain at the failure to sell until the maturity of the last $600 of the purchase price of the new truck, and at this time the used truck was shown to be worth only $150. This assignment is overruled.

The third and last assignment relies upon an estoppel because the complainant failed to make some effort to dispose of the truck, or notify the defendant of the breach of said contract and the failure to sell for eighteen months after the death of Willis. The contract was not breached until near the end of this term, and the defendant does not testify that she did not have notice of the contract, while one of the witnesses states he mentioned it to her soon after her husband's death.

The judgment of the lower court is affirmed.

Thompson and Snodgrass, JJ., concur.