LILA G. BUTLER *et al. vs.* F. STURGES RICHARDSON *et al.*

AUGUST 4, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J.   This is a bill in equity for specific performance of a contract in a lease by which respondents F. Sturges Richardson and Uzelle deR. Richardson, husband and wife, agreed to sell certain leased real estate to complainants Lila G. Butler and Maude H. Platt who were in possession as lessees thereof.   After a hearing on bill, answer and oral proof in the superior court a decree was entered granting such relief and also permanently enjoining respondents from prosecuting at law a pending action of trespass and ejectment involving the real estate in question.   From such decree respondents have appealed to this court.

Under their reasons of appeal, they have raised the following points: First, that the language of the lease did not create an option binding them to sell the demised real estate but merely gave complainants a first refusal to purchase; and, second, that whether such language.created an option or a first refusal, complainants never entered into a contract to purchase because they never legally elected to do so. In substance, their contentions are that the trial justice erred in construing the lease as creating an option and that he was clearly wrong in finding that complainants had complied with its terms and conditions.

It appears from the evidence that respondents, who were joint owners of real estate situated at 16 Chapin Road, Barrington, in this state, entered into an indenture of lease thereof to the complainants on August 28, 1945 for a term of one year. Immediately after the lessee's covenants in the indenture there is a covenant which reads as follows: "It is mutually agreed that, at any time while the Lessees are the occupants of the premises herein leased, as Lessees under this lease or any extension thereof or renewal thereof, or as tenants from month to month or otherwise, the Lessors will give them an option to buy at a price of $15,000 Or if the Lessors shall have any offer for the purchase of said premises, which the Lessors are willing to accept, the Lessors prior to accepting same, give the Lessees an opportunity to purchase the said premises on the same terms, by notifying the Lessees in writing of such offer and giving the Lessees 10 days thereafter in which the Lessees shall decide if they will purchase said premises on the same terms. In the event the Lessees exercise this option to buy, any and all rents paid up to the date of delivery of Deed to the Lessors shall be deducted from the sale price. In this event taxes insurance and water bills during the terms of this lease up to the delivery of deed shall be paid back to the Lessors by the Lessees. In the event the Lessees do purchase the above mentioned property, the regular brokers commission will be paid by the Lessors to Farnum & Hill."

The complainants entered into possession and lived on the demised premises until December 29, 1945, when they went to Florida. While they were there Mrs. Richardson personally called in February 1946 and showed them a telegram dated February 22, 1946 from Mrs. Miriam Hill of Farnum & Hill, respondents' agents, stating that they had a purchaser for the leased premises. Thereafter Mrs. Richardson gave complainants the following written notice: "As per telegram received from my real estate agent with an offer to purchase my property at 16 Chapin Road, Barrington, Rhode Island, kindly exercise your rights to purchase as per terms of your lease, as same will expire ten (10) days from today, March 4, 1946." Complainants were surprised that there was a ten days provision in the lease. They had left the lease in Barrington and apparently could not recollect that such a provision existed therein affecting their option to purchase, although they knew the lease gave them that option.

However, regardless of their lack of recollection of the precise provisions relating to the option they treated Mrs. Richardson's notice as applying thereto and without being informed or making any inquiry as to the amount of the offer which respondents' agents had received they immediately wrote to Mrs. Hill that they were exercising their option to purchase for $15,000. They also inquired of her "regarding the amount required to bind the deal * * *." Mrs. Hill requested $500 and complainants promptly sent her their check for that amount.

They returned to Barrington on April 29, 1946 and continued to pay rent while waiting for respondents to deliver a deed and close the deal. In the meantime respondents became estranged from each other and nothing was done about completing the transaction. Finally upon the advice of their counsel, complainants, in June 1946, declined to pay rent. Counsel had told them that such action on their part probably "would bring things to a head." Thereafter on July 20, 1946 they were served with a writ of trespass

and ejectment for nonpayment of rent, thus indicating that respondents did not intend to go through with their contract to sell. Consequently on July 26, 1946 complainants brought the instant bill and obtained an *ex parte* order temporarily restraining respondents from prosecuting further their action at law. Later, after a hearing, the superior court issued a preliminary injunction continuing such restraining order until further order of the court.

The first question is, did the language of the lease which we have quoted above constitute an option to purchase or merely a first refusal. We think it may be reasonably construed to do both without impairing complainants' express and explicit right of option. It is clear from the language of the lease that the complainants desired at least a year, the term of the lease, to decide whether to purchase the real estate for the price of $15,000, and that the respondents intended to grant that right. This is confirmed by the provision in the lease that, in the event complainants exercised their right to purchase, the rents paid by them were to be deducted from the purchase price and they were to reimburse respondents for taxes, insurance and water bills paid by them during the lease. There can be no question that respondents granted the lease to the complainants as potential purchasers of the demised premises for a definite price under certain conditions. Complainants might become actual purchasers in two ways, one at their own election for $15,000, and the other if respondents received an offer from a third person which complainants expressed a willingness to meet within ten days after receiving notice of such offer.

The option provision is clear and explicit. "It is mutually agreed that, at any time while the Lessees are the occupants of the premises herein leased, as Lessees under this lease or any extension thereof or renewal thereof, or as tenants from month to month or otherwise, the Lessors will give them an option to buy at a price of $15,000." That agreement is complete and not coupled with or con-

ditioned upon any other agreement. It is true as respondents contend that it is expressed in the future tense but the provisions for adjustment of the price in the event complainants exercise the right to purchase show that the right of option became effective contemporaneously with the commencement of the lease.

The provision which follows the option is an independent privilege and is not as definite as the option. Plainly it needs some construction, but it should not be construed in such a way as to limit or detract from the complainants' right under the option. It is disjoined therefrom and in no way forms a part of or a condition precedent to the option provision. "Or if the Lessors shall have any offer for the purchase of said premises, which the Lessors are willing to accept, the Lessors prior to accepting same, give the Lessees an opportunity to purchase the said premises on the same terms, by notifying the Lessees in writing of such offer and giving the Lessees 10 days thereafter in which the Lessees shall decide if they will purchase said premises on the same terms." If that provision stood alone there would be no difficulty. It is clearly a first refusal to purchase, and does not become effective unless the respondents are willing to sell. If they are willing to sell they may not sell to anyone other than the complainants until an opportunity is afforded complainants to purchase at the price offered. Hence they must make known to complainants the price which has been offered.

But the question here is what effect this provision for a first refusal has, if any, upon the provision for an option. As we indicated above it has no effect whatever. The right of option remains unimpaired. Until the time prescribed for its exercise expires, the respondents cannot sell for any amount without complainants' consent. However, the provision for a first refusal may nevertheless serve a useful purpose. It provides a means whereby respondents, if they desired, could induce an acceleration of complainants' decision to purchase by affording them an op-

portunity to purchase at a price more advantageous to them than the price fixed in the option. Of course the provision could not serve this purpose if the offer was at a higher price, and consequently it is inconceivable that the parties in agreeing to the provision could have contemplated any offer except one that was lower than $15,000. We are of the opinion, therefore, that the provision for a first refusal should be construed in that light, not so much as an alternative to the provision for an option but rather as a supplement thereto.

This provision being at all events an option it bound respondents to sell the premises to complainants, if at any time before the expiration of the lease they gave notice of their acceptance to respondents of their offer to sell for $15,000. An option is a unilateral contract in which the optionor agrees with the optionee that he has a right to buy the optionor's property according to the precise terms and conditions of the contract. *Morgan* v. *Forbes,* 236 Mass. 480. It has also been defined as a continuing offer to sell which may not be revoked during the period fixed for its acceptance, if it is under seal or if the agreement fixing the time is supported by a valuable consideration. *Willard* v. *Tayloe,* 8 Wall. 557. The agreement for the option contained in the lease in the case at bar meets those requirements. Even if that provision were nothing more than a first refusal it would likewise meet such requirements, as complainants rightly contend. *O'Brien* v. *Boland,* 166 Mass. 481.

It appears from the evidence in the instant case that the complainants assumed that Mrs. Richardson's letter was a notice to them to decide whether or not to exercise their option. Acting on that assumption they exercised it and notified Mrs. Hill as respondents' agent. That they so acted when they were not obliged to do so cannot be used as an argument against them to show that they did not have a right of option. Moreover, they were not obliged to act upon Mrs. Richardson's letter even if we treat the

provision in the lease solely as a right of first refusal, because that letter did not comply with the requirements of that provision by informing complainants of the terms of the offer which respondents had received. The fact remains that the complainants acted in accordance with the option provision and without any regard to their right, under the provision for a first refusal, to be informed of an offer by another to purchase at a different price.

Conceding that they acted on the option provision, the next question is, did they do so in accordance with law. Respondents contend that complainants in communicating their election to purchase to Mrs. Hill merely communicated it to their own agent and not to respondents as the law requires. That contention is clearly without merit. Mrs. Hill was as much their agent as she was complainants' agent. The covenant for the option in the lease impliedly says so; Mrs. Richardson in her letter to the complainants says so. Upon receiving that letter complainants accordingly wrote to Mrs. Hill, whom Mrs. Richardson referred to as her agent, and asked what amount they should send to her "to bind the deal," as they phrased it. When Mrs. Hill replied and suggested $500 they promptly sent her their check for that amount. In these circumstances we are of the opinion that the trial justice was not clearly wrong in finding that this was a sufficient communication to respondents from the complainants of their election to purchase.

Respondents, however, make this further contention that such election was ineffective, as a tender of the full purchase price was necessary before they could be compelled to convey. It is true that an optionee must be ready to pay the price as fixed in the option after he has accepted. 101 A.L.R. 1432. But this does not mean that he must make such tender contemporaneously with such acceptance. It is sufficient if after he notifies the optionor of his election he is ready, willing and able to pay the price at the time for delivery of the deed by the optionor. The complainants

here more than met such requirement. At the time of notifying respondents' agent of their election they actually paid $500 as an earnest of their good faith. That was not required by the terms of the option. Indeed, until an adjustment of rents, taxes, insurance and water bills was made and applied to the fixed purchase price in accordance with the option the amount to be paid could not be known to the parties. Until that adjustment was made known to complainants, and respondents were ready to deliver a deed, complainants could not be obligated to tender any amount.

We are of the opinion that in the circumstances here the trial justice was correct in, finding that complainants had effectively exercised their option and were entitled to specific performance by the respondents of the contract to sell which arose as a result of complainants' acceptance of respondents' offer in accordance with the option. However, a decree ordering specific performance was entered against only respondent F. Sturges Richardson because he became, as a result of divorce proceedings between him and his wife, the sole owner of the demised premises sometime during the progress of the events recounted herein.

It appears from the transcript that, at the conclusion of all the evidence, counsel for respondent Uzelle deR. Richardson stated to the court: "Mrs. Richardson is a party to the Bill of Complaint, it is true, and she has no interest—she's disinterested. She does not particularly care about the outcome. She has no interest in the thing other than being named a party. She's here in court. There has been a property settlement between them—Mr. Richardson and Mrs. Richardson." And counsel for Mr. Richardson interposed: "She has been paid for her interest in the property. He's now the sole owner." Later in response to a query by the trial justice addressed to Mrs. Richardson's counsel, he said: "I have nothing to present." Accordingly the decree that was entered does not refer to Mrs. Richardson.

Respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Harold W. James, Fred M. Langton,* for complainants.

*Worrell & Hodge, Paul H. Hodge,* for respondents.