SHELL OIL COMPANY, Plaintiff-Appellee,

v.

Emmogene Snyder PRESCOTT, Defendant-Appellant.

No. 17917.

United States Court of Appeals Sixth Circuit.

July 23, 1968.

Leslie A. Nicholson, Memphis, Tenn. (Leslie A. Nicholson, Nicholson & Moore, Memphis, Tenn., on the brief), for appellant.

J. Martin Regan, Memphis, Tenn. (Laughlin, Watson, Garthright & Halle, Memphis, Tenn., of counsel), for appellee.

Before O'SULLIVAN and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

The Shell Oil Company (hereinafter "Shell") sought specific performance of its alleged right to purchase for $32,500 the premises leased by it from appellant, Mrs. Prescott, under a purchase option contained in the lease. The District Court granted Shell's cross motion for summary judgment and this appeal followed.

The material facts in this case were stipulated by the parties and are not in dispute. Appellant was the lessor in a written lease agreement with Shell, the pertinent provisions of which are set forth below:

"Thirteenth. At any time during the term of this lease or any extension or renewal, Shell shall have the option to purchase the leased premises, with all appurtenances, improvements and equipment and Lessor's fixtures and personal property thereon, for the sum of Thirty Two Thousand Five Hundred Dollars ($32,500.00) exercisable by notice to Lessor.

"Fourteenth. If at any time during the term of this lease, or any extension or renewal thereof, Lessor receives from a ready, willing and able purchaser a bona fide offer to purchase the leased premises, which Lessor desires to accept, Lessor shall give Shell notice, setting forth the name and address of the prospective purchaser and the price and terms of the proposed

sale, accompanied by Lessor's affidavit that such prospective sale is in good faith. Shell shall thereupon, in addition and without prejudice to Shell's rights under Article Thirteenth, have the prior option to purchase said premises and Lessor's improvements, fixtures and personal property thereon from Lessor at said price and terms. If Shell elects to exercise said option, it shall so notify Lessor within twenty-five days after Shell's receipt of the aforesaid notice of Lessor's desire to sell. Shell's right to purchase under this Article shall be a continuing right during this lease, or any extension or renewal, whenever Lessor, or any successor in title, desires to sell said property. Shell's failure to exercise any option under this Article shall in no way affect this lease, Shell's rights under Article Thirteenth, or its right to the estate herein created."

The following events occurred during the term of the lease. On March 18, 1966, appellant notified Shell that she had received a bona fide offer from a third party to purchase the property in suit for $50,000, and gave Shell the right to purchase at that price under the first refusal option contained in Article Fourteen. On April 4, 1966, Shell notified appellant that it declined to exercise its option under Article Fourteen, but that it did elect to exercise its purchase, or fixed price, option under Article Thirteen to acquire the property for $32,500. When appellant disputed Shell's claim under Article Thirteen, this diversity action was commenced in the United States District Court for the Western District of Tennessee.

The issue presented here is one of construction. It is appellant's position that under the terms of the lease the party first exercising one of the dual options fixes the rights and liabilities of the other party. It is thus contended by appellant that while Shell had the absolute right to exercise its purchase option at any time prior to notification by her of receipt of a bona fide offer

from a prospective purchaser which she intended to accept, when she gave such notice, Shell's right to purchase the property for $32,500 pursuant to the purchase option terminated.

It is Shell's contention that in addition to its right to possession of the property under the lease agreement, it had the right to purchase the property for $32,-500 at any time within the term of the lease under the fixed price option, as well as the continuing right to buy the subject property pursuant to the first refusal option for an amount which, as a practical matter, would be equal to or less than the purchase option price.

Had the parties to this action desired, it is clear that they could have executed a dual option lease similar to the one under consideration whereunder the lessor had the power to terminate the purchase option at any time before its exercise by notifying the lessee of her intent to accept a bona fide offer and offering the lessee first refusal. See Corbin, Contracts § 261 (1950), and cases cited *infra*. However, the lease in dispute is not susceptible to such construction, which would require the following language appearing in Article Fourteen to be deemed surplusage and as without effect:

"Shell shall thereupon, in addition and without prejudice to Shell's rights under Article Thirteen, have the prior option to purchase said premises. * * *"

* * * * * *

"Shell's failure to exercise any option under this Article shall in no way affect this lease, Shell's rights under Article Thirteen, or its right to the estate herein created."

Under applicable Tennessee law, as elsewhere, courts should, in ascertaining the intent of the parties to a contract, construe the contract as a whole and give effect to every part thereof. See Edelen Transfer & Storage Co. v. Willis, 16 Tenn.App. 99, 66 S.W.2d 214 (1932); City of Memphis v. Ford Motor Co., 304 F.2d 845 (6th Cir. 1962). A corol-

lary principle is that courts are not at liberty to make new contracts for the parties by adding or deleting provisions. See McKee v. Continental Ins. Co., 191 Tenn. 413, 234 S.W.2d 830, 22 A.L.R.2d 980 (1950); Petty v. Sloan, 197 Tenn. 630, 277 S.W.2d 355 (1955).

█ In holding for Shell on the basis of the language in Article Fourteen, the District Court stated:

"[W]hen you read Paragraph 14 carefully it is inescapable in my opinion that you cannot do anything other than limit that option to offers which are lower than the thirty-two thousand five hundred dollar option."

This was but another way of stating that Shell's right to exercise the purchase option was continuing and not terminable upon receipt of notice pursuant to the first refusal provision, and that in these circumstances, Shell would not likely pay more than $32,500 for the leased property, nor would a prospective purchaser likely offer more than $32,500 for the premises with the purchase option outstanding. The District Court's construction finds ample support in the two provisions in question, and the court properly rejected appellant's argument that the parties to the lease could not have intended to "limit" the first refusal option to offers lower than $32,500. In this respect, it has been suggested in cases construing dual option leases somewhat similar to the one here that the first refusal option may be merely a device by which the lessor can induce an acceleration of the lessee's decision to purchase by affording an opportunity to purchase at a price more advantageous than that set forth in the purchase option. See Butler v. Richardson, 74 R.I. 344, 60 A.2d 718 (1948); Sinclair Refining Co. v. Clay, 102 F.Supp. 732 (N.D.Ohio 1951), aff'd, 194 F.2d 532 (6th Cir. 1952); cf. Sinclair Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R.2d 595 (1949).

Appellant relies on the following cases involving dual option leases, all of which she contends support her position that lessee's rights under the purchase option terminate once an election is made not to purchase the leased premises when given the opportunity to do so on a first refusal basis. Harding v. Gibbs, 125 Ill. 85, 17 N.E. 60 (1888); Manasse v. Ford, 58 Cal.App. 312, 208 P. 354 (1922); Adams v. Helburn, 198 Ky. 546, 249 S.W. 543 (1923); Shell Oil Co., Inc. v. Blumberg, 154 F.2d 251 (5th Cir. 1946); Northwest Racing Ass'n v. Hunt, 20 Ill.App.2d 393, 156 N.E.2d 285 (1959); Texaco, Inc. v. Rogow, 150 Conn. 401, 190 A.2d 48 (1963). However, while so-called dual option lease agreements are often generally similar, because of variances in phrasing and circumstances of execution it is not often that a decision construing one contract will be dispositive of a case construing another. The prime and controlling distinction between the above cases and the instant case is found in the language of Article Fourteen preserving to Shell its rights to the purchase option. In all of the above cases, there was either a basis for finding that the purchase option had been limited or qualified by the first refusal option, or nothing to indicate that the purchase option was not limited or qualified by the first refusal provision. That is not the case here. Shell's right under the fixed price option in Article Thirteen was not limited or modified in any manner by the subsequent Article giving to it the right of first refusal. On the contrary, by the specific terms of Article Fourteen, Shell's rights thereunder were "in addition and without prejudice to Shell's rights under Article Thirteen. * * *" Further, the failure to exercise the Article Fourteen option was, according to its explicit language, "in no way [to] affect * * * Shell's rights under Article Thirteen." Accordingly, it is here determined that judgment was properly entered for Shell, and the judgment should be affirmed.

Affirmed.