374 So.2d 561 (1979)
Francis P. CONROY, II, Appellant,
v.
AMOCO OIL COMPANY, Appellee.
Lula M. MANN, As Trustee of the Estate of Charles H. Mann, Sr., Appellant,
v.
AMOCO OIL COMPANY, Appellee.
Nos. LL-292, LL-328.
District Court of Appeal of Florida, First District.
August 7, 1979.
Earl M. Barker of Marks, Gray, Conroy & Gibbs, Jacksonville, for Case LL-292 for appellant and for Case LL-328 for appellee.
Marshall W. Liptak of Knight, Kincaid, Poucher & Harris, Jacksonville, for Case LL-328 for appellant and for Case LL-328 for appellee.
Judson Freeman of Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, for Case LL-328 for appellant and for Case LL-292 for appellee.
LARRY G. SMITH, Judge.
In this case the trial court construed a lease agreement between appellee Amoco Oil Company and appellant Lula M. Mann, and entered final judgment in favor of *562 Amoco for specific performance of a fixed price purchase option contained in the lease.
The issue for our consideration is whether Amoco's option to purchase the property it leased from appellee Mann for the fixed price of $35,000.00 as specified in the lease was terminated because of Amoco's earlier rejection of the opportunity to purchase the property under a "first refusal" option[1] when notified by the lessor, Mann, of her proposal to sell the property to appellee Conroy for a price of $62,500.00. Since the facts are not in dispute, resolution of this controversy will depend entirely upon whether we agree with the trial court's construction of the lease provisions concerning the fixed price option, and the first refusal option.
A brief statement of the factual background that gave rise to this litigation is as follows: Mann leased property to Amoco. Mann wanted to and did contract to sell to Conroy. Mann was required to by the lease, and did, notify Amoco that Conroy wanted to buy for $62,500.00. Amoco declined to buy, although it had the option of first refusal. Later, Amoco decided it would buy, but maintained the right to buy for $35,000.00, since the lease also provided an option to purchase for that amount. Mann refused to sell for $35,000.00, and the contract to sell to Conroy was still in effect, but the sale had not been completed. Conroy therefore filed suit for declaratory judgment against both Amoco and Mann, asking the court to declare his rights under the contract to buy from Mann. Amoco cross-claimed for specific performance against Mann, because it claimed the right to buy the property for $35,000.00 under the fixed price option. Both Conroy and Mann claimed that Amoco lost its right to buy for $35,000.00 under the fixed price option by refusing to buy for $62,500.00 under the first refusal option. The trial judge disagreed with Mann and Conroy, and granted specific performance for Mann to convey to Amoco for $35,000.00.
Paragraph 6(a) contains the fixed price purchase option, and 6(b) contains the first refusal option. These provisions are as follows:
"6. (a) LESSEE is hereby granted the right and option to purchase the demised premises together with all buildings, improvements and equipment of LESSOR thereon, including all buildings and improvements hereafter erected upon the demised premises by LESSOR at any time during the term of this lease or any renewal period at and for the price of Thirty-Five Thousand dollars ($35,000.00) in fee simple. * * *
"(b) If the LESSOR at any time during the term of this lease or any renewal or extension thereof receives a bona fide offer to purchase the demised premises which offer the LESSOR desires to accept, LESSOR agrees to give LESSEE thirty (30) days' notice in writing of such bona fide offer, setting forth the name and address of the proposed purchaser who has made the offer, the amount of the proposed purchase price, and the terms of payment thereof. The LESSEE shall have the first option to purchase the demised premises within the above mentioned thirty day period at the same price and on the same terms of any such proposal. In the event that the LESSEE does not exercise its option to purchase the demised premises within the aforesaid period and said premises for any reason are not sold pursuant to the bona fide offer set forth in the notice, then LESSEE shall have, upon the same conditions of notice, the continuing first option to purchase the said premises upon the terms of any subsequent bona fide offer or offers to purchase. Should LESSOR, in the absence of the exercise by LESSEE of its option to purchase hereunder, consummate a sale to any such bona fide offerer, such sale shall not, however, in any manner affect the right, title, interest and estate of LESSEE under this lease or any options therein contained."
*563 Paragraph 15 of the lease provided as follows:
"15. No assignment or change of interest by LESSOR in the premises hereby demised, whether recorded or unrecorded, shall be binding upon LESSEE unless and until LESSEE shall be actually notified thereof by registered mail, and in no event shall such assignment or change of interest affect this lease or the renewal or purchase option rights of LESSEE hereunder."
We conclude, as did the trial judge, that the provisions of the lease, considered in their entirety, disclose an intent that the fixed price purchase option was to survive notwithstanding the failure of Amoco to purchase upon notification by the lessor of its desire to accept the offer of a third party to purchase the property. There is no provision in the lease expressly providing for termination of the fixed price purchase option under any circumstances. On the other hand, there is explicit language providing for preservation of both options throughout the term of the lease. Paragraph 6(b) clearly provides that in event lessee declines to exercise its option to purchase after receiving property is not sold to the proposed purchaser, then the lessee shall continue to have the same first option to purchase upon the terms of any subsequent bona fide offer to purchase. Continuing further, the last sentence of paragraph 6(b) provides that if the lessee declines to purchase under the first refusal provisions, and if lessor consummates a sale to a third party, "such sale shall not, however, in any manner affect the right, title, interest and estate of LESSEE under this lease or any options therein contained" (emphasis supplied). The term "or any options" is all inclusive, not limited in any fashion, and must be given its full meaning and intent in construing the lease.
Furthermore, paragraph 15 specifically provides for preservation of all purchase option rights in event of an assignment or change of interest by the lessor:
"No assignment or change of interest by LESSOR in the premises hereby demised ... shall ... affect this lease or the renewal or purchase option rights of LESSEE." (Lease, paragraph 15) (emphasis supplied)
An "assignment", or "change of interest by LESSOR in the premises hereby demised", are terms broad enough to contemplate a sale either of a partial or the entire interest of the lessor in the property, although it is not necessary to base our decision upon such an interpretation. Cf. Texaco, Inc. v. Rogow, 150 Conn. 401, 190 A.2d 48 (1963).
Appellants advise in their briefs that there is no Florida case law governing this controversy. They contend, however, that cases from other jurisdictions establish a rule whereby, under similar circumstances, the failure on the part of a lessee to exercise the right to purchase under a first refusal option, when duly notified of the sales proposal by the lessor, terminates the lessee's rights to purchase under a fixed price option contained in the lease, and the fixed price purchase option thereafter becomes null and void, and cannot later be enforced by the lessee against the lessor or its successor in interest. Adams v. Helburn, 198 Ky. 546, 249 S.W. 543 (1923); Bobali v. Tamapa Company, 235 Pa.Super. 1, 340 A.2d 485 (1975); Harding v. Gibbs, 125 Ill. 85, 17 N.E. 60, 8 Am.St.Rep. 345 (1888); Manasse v. Ford, 58 Cal. App. 312, 208 P. 354 (1922); Northwest Racing Association v. Hunt, 20 Ill. App.2d 393, 156 N.E.2d 285 (1959); Shell Oil Company v. Blumberg, 154 F.2d 251 (5th Cir.1946); Shell Oil Company v. Prescott, 398 F.2d 592 (6th Cir.1968), and Texaco, Inc. v. Rogow, supra.
We have examined the cases cited by appellant and fail to find a clear statement of such a rule, if one does indeed exist.[2] What does appear is that in construing *564 the language of particular leases, where disputes have arisen over interpretation of first refusal and fixed price purchase options, the courts have on occasion found that the operative language of the lease, alone or in combination with some other circumstances, effected a termination of the fixed price option.
We notice that the Connecticut Court of Errors in Texaco, Inc. v. Rogow, supra, prefaced its discussion of the legal principles applicable in such cases with the following caveat:
"... A collection of cases involving the interpretation and construction of contracts containing provisions embodying a fixed price option and a right of first refusal may be found in 8 A.L.R.2d 604. See also Texas Co. v. Crown Petroleum Corporation, 137 Conn. 217, 224, 75 A.2d 499 (which involved the predecessor of the plaintiff and was concerned with a similar lease). Since such contracts, although often generally similar, are worded differently and executed under varying circumstances, a decision interpreting and construing one contract is far from controlling in a case involving another." (Texaco, Inc. v. Rogow, opinion page 51) (emphasis supplied)
Our examination of the cases confirms the Connecticut court's observation.
In Texaco, Inc. v. Rogow the lease contained a fixed price option and an option of "first refusal" giving lessee the right to purchase on the same terms as offered by any third party purchaser of which lessor gave lessee notice, and which lessor desired to accept. The fixed price option, however, by its terms could not be exercised before the end of the ninth year of the leased term. Lessor gave notice to lessee of a proposed sale to a third party purchaser during the nine year period when the fixed price option was not exercisable. Upon receipt of the notice, lessee attempted to exercise the fixed price option to purchase, this price being considerably below the offer made by the third party. The lessee offered what was said to be an "ingenious" argument that the fixed price option could be exercised at any time against a third party purchaser of the property. The court found that plaintiff's interpretation would, "solely by implication", wholly subordinate the first refusal provision to the fixed price option. This interpretation, said the court "is reached in the absence of any language in the lease expressive of any such intention". The court pointed out that such interpretation would render totally inoperative the provisions allowing lessor the unrestricted opportunity to obtain the fair value of the property during the first nine years. The court held that there was no language whatever in the lease indicative of any intention other than that the first refusal provision was the only one under which lessee could purchase the property during the first nine years and that, after that period, the first refusal provision was one of two option provisions, each of which was on a parity with the other. It would be unreasonable to hold, said the court, that if the lessee refused to exercise a first refusal option it could thereafter, at any time after *565 the first nine years, purchase the property under the fixed price option despite a prior sale of it to a third party purchaser. The court found that plaintiff's claims under the lease were in violation of ordinary rules of construction, and that the only reasonable interpretation considering the entire agreement was that the fixed price option could be exercised only after the first nine years, and then only prior to receipt of a notice from lessor of a third party offer, and that upon failure to purchase under the first refusal option the fixed price option was rendered ineffective and could not be exercised at all.
There was no language in the Texaco v. Rogow lease that could by any reasonable interpretation be said to preserve the fixed price option after a sale by lessor to a third party purchaser. By contrast, as already pointed out, the Amoco lease does contain express provisions manifesting an intention to preserve the fixed price purchase option.
Northwest Racing Association v. Hunt, 20 Ill. App.2d 393, 156 N.E.2d 285, (1959), another case relied upon by appellants, contains the following specific language terminating all rights under the fixed price purchase option upon lessee's failure to exercise the right to purchase under the first refusal option:
"... on the failure of lessee to exercise such option within the time aforesaid, the option hereby granted to lessee in this and the foregoing paragraphs shall be and stand cancelled and revoked." (emphasis supplied) (opinion page 287)
The above provision appeared in the paragraph granting the first refusal option, and reference to the option in the "foregoing paragraphs" referred to the fixed price option. This case therefore fails to support appellants' position.
In Shell Oil Co., Inc. v. Blumberg, 154 F.2d 251 (5th Cir.1946), the lease contained two options. The first conferred upon the lessee an option to purchase at a fixed price. In construing the lease the court found that the first refusal option contained in the second paragraph "limits or modifies" the fixed price option contained in the preceding paragraph. Again, there was no express language which could be interpreted as preserving the fixed price option. The court found that the language: "Lessee's failure to exercise any option herein contained shall not in any way affect this lease or the rights of Lessee in the estate hereby created", did not refer to the fixed price option rights of the lessee but to the lease itself, and to any future lease extension or renewal options contained therein. By contrast, the Amoco lease under consideration expressly provided that a sale under the first refusal option not only did not affect the "right, title, interest and estate of the lessee", but as well "any options" contained in the lease.[3] Paragraph 15 specifically preserved "renewal" or "purchase option rights" of the lessee after any "assignment or change of interest by lessor".
Appellants next contend that the particular language of the Amoco lease requires an interpretation favorable to their position. They argue that since Amoco drew the lease, and since it could have easily inserted a clause unequivocally preserving the fixed price purchase option, as in Prescott, its failure to do so should be construed most strongly against Amoco; and the lease should be interpreted as calling for a termination of the fixed price option after Amoco's failure to exercise its option to purchase under the first refusal provisions.
The difficulty we have with this argument is that it would require us to reach the results sought by appellants by simply failing to give effect to language which is included in the lease.
The Amoco lease provisions more closely resemble those found in Shell Oil Company v. Prescott, 398 F.2d 592 (6th Cir.1968) than the leases dealt with in other cases cited by appellant. In the Prescott case there were two options, one a fixed price and the other a first refusal option. The thirteenth paragraph set out the fixed price *566 option. The fourteenth paragraph contained the first refusal option which concluded with the following sentence:
"Shell's failure to exercise any option under this Article shall in no way affect this lease, Shell's rights under Article Thirteenth, or its right to the estate herein created." (opinion page 593)
The lessor in Prescott, as here, contended that Shell's failure to exercise its purchase option under the first refusal terminated the fixed price option. In disposing of this contention the court said:
"Had the parties to this action desired, it is clear that they could have executed a dual option lease similar to the one under consideration whereunder the lessor had the power to terminate the purchase option at any time before its exercise by notifying the lessee of her intent to accept a bona fide offer and offering the lessee first refusal. See Corbin, Contracts § 261 (1950), and cases cited infra. However, the lease in dispute is not susceptible to such construction, which would require the following language appearing in Article Fourteen to be deemed surplusage and as without effect:
* * * * * *
`Shell's failure to exercise any option under this Article shall in no way affect this lease, Shell's rights under Article Thirteen, or its right to the estate herein created.'" (opinion page 593)
The Prescott court in its opinion considered and rejected as inapplicable each of the cases relied upon by appellants in the case sub judice with exception of Bobali v. Tamapa Company, 235 Pa.Super. 1, 340 A.2d 485 (1975).[4] We likewise find appellants' reliance upon those cases to be unavailing, and no useful purpose would be served by prolonging this opinion by discussing each in detail.
Other cases, cited by appellee, merely furnish examples of enforceable fixed price option clauses, but under circumstances not sufficiently comparable to those in the case under consideration to merit detailed discussion. However, they do furnish ample basis for rejection of appellants' argument that in construing leases containing dual option provisions such as these it must be assumed that the parties contemplated utilization of the first refusal option only where the lessor desired to sell for a price higher than that set by the fixed price option. There is obviously no basis for appellants' contention in this regard, for the circumstances of this and the cases to which we have been referred just as easily support the assumption that the parties contemplated use of the first refusal option in event lessor desired to sell at a price lower than the one in the fixed price option. See Butler v. Richardson, 74 R.I. 344, 60 A.2d 718 (1948); Sinclair Refining Co. v. Clay, 102 F. Supp. 732 (N.D. Ohio 1951), Aff'd. 194 F.2d 532 (6th Cir.1952), cf. Sinclair Refining Co. v. Albritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R.2d 595 (1949).
We find no error in the decision of the trial court, and the judgment appealed from his hereby affirmed.
McCORD, Acting C.J., and ERVIN, J., concur.
NOTES
[1] So called, although technically such agreements confer no rights until Lessee receives notification of an offer made to Lessor by a bona fide purchaser. Vol. 3, Thompson on Real Property (1959 Replacement) § 1151, p. 574.
[2] Shell Oil Co. v. Blumberg, 154 F.2d 251 (5th Cir.1946) for example, is one of the cases relied upon by appellant for existence of such a rule. Footnote 1 of that opinion states in part:

"The general rule as to the interpretation of such contracts is stated in volume 3, Thompson on Real Property, § 1329, p. 492: `When the lessee is given the first privilege of purchasing the premises, he must, after notice from the lessor of the receipt of a bona fide offer, elect to exercise his privilege in accordance with the terms of the lease or the right is lost.'"
The 1959 replacement edition of volume 3, Thompson on Real Property, § 1153 (replacing former § 1329 of the 1940 edition) states the "rule" somewhat differently, viz:
"A first privilege to buy must be exercised if at all upon notice that lessor has received a bona fide offer to sell."
This latter statement (the 1959 edition) cites as references Shell Oil Co. v. Blumberg, supra, and Yager v. Dill, (Sup.) 71 N.Y.S.2d 864. Yager v. Dill, however, did not involve dual purchase options. It is questionable whether the language in Thompson was intended to set forth a general rule applicable to dual option cases. Our reading of the cases leads to the conclusion that the particular language used in the leases and the circumstances in which enforcement is sought is controlling, rather than any specific rule of law governing interpretation of dual option clauses in leases. See Shell Oil Co. v. Prescott, 398 F.2d 592 (6th Cir.1968).
[3] Lease paragraph 6(b).
[4] Bobali v. Tamapa Company does not involve a lease, but an independent purchase option agreement with specific provisions and circumstances not analogous to those in this case.